**FRIEDMAN et al. v. UNITED STATES.**

Nos. 14612, 14663.

United States Court of Appeals
Eighth Circuit.

Dec. 31, 1952.

Rehearing Denied Jan. 23, 1953.

John W. Graff, St. Paul, Minn. (Marvin A. Miller; Miller, Miller & Miller, Cherokee, Iowa, and Hoffmann, Donahue & Graff, St. Paul, Minn., on the brief), for appellants.

William B. Danforth, Asst. U. S. Atty., Sioux City, Iowa (Tobias E. Diamond, U. S. Atty., Sioux City, Iowa, on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether the District Court abused its discretion in denying the appellants' motions to vacate their sentences and for leave to withdraw their pleas of guilty and to stand trial.

The appellants, Ray E. Friedman and American Produce Company, a corporation, are two of six defendants who on March 21, 1952, were jointly indicted by the Federal Grand Jury for the Northern District of Iowa. The other defendants were Matthew Dvorkin, Nathan Dvorkin, Larry Dvorkin [also known as Sam Dvorkin], and Del Smith [also known as Delmond Smith]. The defendant American Produce Company was owned by Ray E. Friedman, who was its President. The Dvorkins and Smith were connected with the Company. It was engaged at Sioux City, Iowa, in the processing of poultry, some of which was furnished to the Department of the Army under contract.

The indictment contained four counts. The first two counts each charged the defendants, under Title 18 U.S.C.A. § 371, with a conspiracy to make false, fictitious and fraudulent statements in a matter within the jurisdiction of the Department of the Army and in violation of Title 18 U.S.C.A. § 1001. The last two counts each charged the defendants with the substantive offense of making such false, fictitious and fraudulent statements to that Department in violation of Title 18 U.S.C.A. § 1001.

The arraignment of the defendants was first set by the court for March 25, 1952, but, at the request of their counsel, was continued to March 29. At that time all of the defendants entered pleas of not guilty. The court fixed April 18, 1952, as the trial date, but later changed it to April 21. On April 16 the court was advised that the defendants wished to change their pleas as to certain counts, and thereupon fixed April 22 as the date for a further hearing.

On April 22 the defendants appeared with their counsel. He had had ample time to familiarize himself with the charges contained in the indictment. He advised the court that the defendants desired to withdraw their pleas of not guilty to part of the indictment. Counsel for the Government stated that it would accept a plea of guilty by the corporation to Count III of the indictment and upon that plea being entered would move to dismiss the remaining counts as to the corporate defendant. Government counsel stated also that it was the understanding of the Government that the individual defendants would change their pleas to Count II of the indictment, and upon pleas of guilty being entered by each of them to that count the Government would dismiss the remaining counts as to each individual defendant.

The court then made the following statement to the defendants:

"Technically the District Attorney has to have the consent of the Court to dismiss any Count in an indictment. But that is a rather technical matter, because if the District Attorney does not want to prosecute particular Counts the Court cannot undertake to carry on the prosecution. I will state this, as to the dismissal of these Counts, if there has been any promise, inducement, or intimation made to you, that has led you to believe, because of such dismissal, what your sentence might or might not be on the remaining Count, you are advised not to enter a plea of guilty as to that, because the defendants and defendants' counsel are informed that no one has any authority to act, to speak or intimate for the Court what sentence a defendant might or might not receive. It is the long standing rule of this Court that no one has any right to speak in any way for the Court in these matters—whether it be the United States Attorney, and I have never known that he has ever done so —at least it has never come to my attention—or any member of the Court staff—and then sometimes there are others who might attempt to do so and give defendants information that if you will do such and such a thing that the sentence will be so and so, or defendant's counsel or whoever it might be, if anybody has attempted to hold out to you what your sentences might or might not be, the Court will not accept your plea of guilty. And you are informed that the maximum punishment on Count II is a fine of $10,000.00 and a sentence to imprisonment for five years —and there is always the possibility that the maximum will be imposed. The Court having thus advised you, if the defendants, or any of them, have been under any belief as to what their sentences might or might not be, because of any statements made by any one, they should withdraw their pleas of guilty, and the Court will have you do so now."

After making this statement, the court asked each of the defendants individually if he had heard the statement, and each of them replied that he had.

Counsel for the Government stated that he had been urged by the defendants' counsel to inform the defendants as to what sentences might be imposed by the court, but had advised them that that matter was solely for the court to determine and was one with which he had nothing to do. He said he had informed the defendants "That they will have to take their chances on their sentences whatever it might be"; and also said, "They go into it with their eyes wide open."

At the conclusion of these statements by the court and Government counsel, Friedman, as President of the defendant American Produce Company, was asked what the

plea of that defendant was to Count III of the indictment. He said, "Guilty." The Government thereupon, with the court's consent, dismissed the remaining counts of the indictment as to the corporate defendant. Each individual defendant was then asked what his plea was to Count II of the indictment, and each said, "Guilty." Government counsel then dismissed the remaining counts of the indictment as to the individual defendants.

In simple language, the offense to which the corporate defendant had entered a plea of guilty was defrauding the Government by upgrading poultry furnished the Army, and the offense to which the individual defendants had entered pleas was conspiring to defraud the Government by falsely representing that the poultry (furnished the Army), which had been eviscerated more than 76 hours after it had been killed, had been eviscerated less than 76 hours after the killing date.

The District Court had before it a presentence report from the Probation Officer. Before pronouncing sentence, the court not only permitted, but invited, counsel for the Government and counsel for the defendants to make complete statements with respect to the charges to which the defendants had entered pleas of guilty. The statement of counsel for the defendants was to the effect that the offenses were more technical than substantial; that, while the defendants admitted that they had conspired to change the "kill date" on a load of poultry to deceive the Army Inspector at the plant of the corporate defendant, so that the poultry could be eviscerated more than 76 hours after it was killed, the poultry was not unwholesome. Counsel for the defendants also stated that there had been very little upgrading of the poultry furnished the Army; that the defendants had at all times endeavored to procure and furnish the Army with the best product obtainable; and that they were all reputable and law-abiding persons of good reputation.

From the remarks of the court made before sentences were imposed, it is apparent that the pre-sentence report of the Probation Officer did not support the claims of the defendants that the offenses of which they stood convicted by their pleas of guilty were trivial and technical, rather than serious or substantial. The court sentenced the corporate defendant to pay a fine of $10,000. The sentence imposed upon the defendant Friedman was five years imprisonment. Each of the other four defendants, whom the court regarded as having been dominated by Friedman, was given a suspended sentence of two years imprisonment, and placed on probation.

The net result of the carrying out of the understanding between the defendants and the Government relative to the disposition of the case was that three counts of the indictment were dismissed as to each defendant; that each of the defendants, upon a plea of guilty, was convicted upon only one count; that four of the five individual defendants charged with having conspired to defraud the Government were placed on probation; that the corporate defendant was fined; and that the defendant Friedman alone received a prison sentence.

On April 24, 1952, two days after sentences had been imposed, the corporate defendant and Friedman filed a motion to vacate their sentences and for leave to withdraw their pleas of guilty and to stand trial. It was asserted in their motion that they were innocent of the charges made in the indictment, and had a full and complete defense to each of the counts. It was also asserted that the defendant Friedman entered a plea of guilty "on the recommendation of his counsel, Frank Margolin, and on the recommendation of Attorney John W. Graff, Ex-United States District Attorney at St. Paul, Minnesota, as under the indictment both attorneys felt that there was no serious violation of the Federal statutes and that rather than incur a lengthy trial and expense to the United States Government, that the most that could be expected would be a reasonable fine." It was further asserted that Friedman entered a plea of guilty "solely because of the fact that he was ignorant of his rights and of the consequence of his act, and the plea was entered solely under a mistake or misapprehension that his violation of the stat-

ute, if any, was purely technical and not of a serious nature." Friedman also alleged that, through fear of the United States Army, fear of what might happen to him in the action and in the courtroom, "and being fearful at that time of the intimacies of a trial, consented to plead guilty April 22, 1952"; that it would be a gross miscarriage of justice if he, an innocent man, was not permitted to present his defense; and that the remarks of the District Judge at the time sentence was pronounced showed that he was misinformed and prejudiced.

Mr. Frank Margolin, of Sioux City, Iowa, who as counsel had represented all of the defendants at the time of their arraignment when they entered pleas of not guilty, and at the time they changed their pleas on April 22 and were sentenced, did not present the motion of the corporate defendant and Friedman for leave to withdraw their pleas of guilty. The motion was prepared and filed by Miller, Miller & Miller, of Cherokee, Iowa, and was verified by the defendant Friedman.

The motion came on for hearing on April 26, 1952. It was argued at length by counsel. No evidence was adduced in support of the allegations of the motion. Mr. Margolin, so far as the record shows, did not appear, nor did Mr. Graff. The defendant Friedman did not testify. At the conclusion of the arguments and statements of counsel, the court found that the pleas of guilty which the defendant Friedman and the corporate defendant were seeking leave to withdraw had been voluntarily, knowingly, and understandingly entered by the defendant Friedman in order that he might escape the possibility of a longer sentence if he stood trial and was convicted. The motion of the two defendants was denied. On May 6, 1952, they appealed from the order denying their motion. This appeal is No. 14,612 in this Court.

On May 19, 1952, Friedman and the corporate defendant again filed a motion to vacate their sentences and for leave to withdraw their pleas of guilty and to stand trial. The grounds of the second motion were in part the same as had been asserted in the first motion. In addition, however, it was alleged that the defendants had, since the hearing of the first motion, discovered evidence showing that a certain Army Captain, in charge of inspecting products processed for the Army in the Sioux City area, had, because of a private grudge against the defendant Friedman, in effect fabricated the evidence which made it appear that he and his company had violated the law, and that this Captain had brought about the indictment. Friedman filed an affidavit in support of the motion, which contains the following statement:

"* * * That said plea of guilty entered by the affiant to the second count for himself and on behalf of the company to the third count under date of April 22, 1952 were entered under a misapprehension of the facts surrounding said alleged offenses and a misconception of the seriousness of the charge that has been made against affiant and the American Produce Company and that both affiant and the Company have a complete defense to the charges which have been made against them and that the ends of justice will be subserved by permitting said judgments and commitments to be vacated and the pleas of guilty heretofore entered to be vacated and pleas of not guilty to be entered in lieu thereof."

The second motion of the two defendants was heard on July 1, 1952. It was argued on their behalf by Mr. John W. Graff, of St. Paul, Minnesota. The court confined the hearing to the issue raised by the assertion that evidence had been discovered, since the disposition of the prior motion, indicating that the defendants were the innocent victims of malice, ill will, or perjured testimony of Army personnel. This evidence was a wire recording of a conversation had by the defendant Matthew Dvorkin, a brother-in-law of the defendant Friedman, with an Army Sergeant who was at Dvorkin's home on a social visit. The conversation as recorded showed disparaging statements made by the Sergeant.

about the accused Captain, and that, in substance, the Sergeant said that the Captain had deliberately brought about the shipment to the Army of unseasonably eviscerated poultry which the defendants had not intended for Army use, and had, through ill will toward the defendant Friedman, brought about the prosecution.

To refute this showing in support of the motion, the Government produced evidence to prove that the investigation which resulted in the indictment was initiated by the Federal Bureau of Investigation; that the accused Captain had not done the things or made the statements charged against him; that he had been present when Friedman admitted to the Captain's superior officer that a certain shipment of poultry to the Army consisted of chickens which had been eviscerated more than 76 hours after they had been killed and that it had been made to appear that the killing date was later than it in fact was. The Captain's superior officer testified that Friedman had admitted to him that the "kill dates" had been altered on this shipment.

The Sergeant whose recorded conversation was offered as newly discovered evidence was not produced as a witness, and, as the District Court observed, the recording was hearsay.

On July 5, 1952, the court made its findings and order. It found that the investigation which led to the indictment against the defendants was made by agents of the Federal Bureau of Investigation, and was not caused, occasioned, or brought about by any of the military personnel having to do with inspection at the plant of the American Produce Company. The court determined that the defendants had not made such a showing as would justify the court in allowing them to withdraw their pleas of guilty, "which were heretofore voluntarily, knowingly, intentionally and understandingly entered by them." The court denied the second motion of the appellants for leave to withdraw their pleas of guilty, and they appealed from this order. The appeal is No. 14,663 in this Court.

We have stated the facts in more detail than necessary, largely for the purpose of showing that the District Court, in exercising its discretion, gave careful consideration to all of the claims and assertions of the defendants.

In their brief the appellants say:

"No claim is made by the appellants that at the time of the entry of their plea that they were not represented by competent counsel. Neither is claim made that any representative of the United States Attorney's office made any agreement with the appellants upon which reliance is now placed. Neither is any claim made that the trial Court misled the appellants at the time of sentence. However, the claim is made that the appellants are innocent of the charge to which a plea of guilty was entered. It is further the contention of the appellants that notwithstanding whatever explanations were made to them by their own counsel, the United States Attorney, and by the Court the plea was based upon a misunderstanding of the facts and a misconception of the seriousness of the offense charged. The appellant Friedman has stated in his affidavit that he not only is innocent of the charges but that he believes he has a complete defense to the charges which have been made against him and the corporation."

Rule 32(d) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., provides:

"A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

This rule was merely declaratory of existing law, Goo v. United States, 9 Cir., 187 F.2d 62, which has recognized that, upon a timely application, the District Court, in the exercise of a sound judicial discretion, has authority to grant leave to withdraw a plea of guilty if good and sufficient cause is shown for so doing.

With respect to the withdrawal of pleas of guilty, there are some well established principles of law to which attention should be directed.

■ A plea of guilty is not a mere admission or extra-judicial confession of guilt; it is itself a conviction and as conclusive as the verdict of a jury. One entering such a plea may be held bound by it. Kercheval v. United States, 274 U.S. 220, 223–224, 47 S.Ct. 582, 71 L.Ed. 1009.

■ A defendant who enters a plea of guilty has no legal right to withdraw the plea. United States v. Bayaud, C.C.S.D. N.Y., 23 F. 721; Gleckman v. United States, 8 Cir., 16 F.2d 670, 673; United States v. Colonna, 3 Cir., 142 F.2d 210, 211; Bergen v. United States, 8 Cir., 145 F.2d 181, 186–187 and cases cited; Goo v. United States, supra, 187 F.2d 62; Williams v. United States, 5 Cir., 192 F.2d 39, 40.

■ An application for leave to withdraw a plea of guilty is addressed to the sound discretion of the trial court, and an order granting or denying such an application is reviewable on appeal only for an abuse of such discretion. United States v. Colonna, supra, 142 F.2d 210, 211; Bergen v. United States, supra, 145 F.2d 181, 187; Stidham v. United States, 8 Cir., 170 F.2d 294, 297–298; Williams v. United States, supra, 192 F.2d 39, 40; United States v. Shneer, 3 Cir., 194 F.2d 598, 599–600.

■ It is not a ground for reversal of a trial court's order refusing leave to withdraw a plea of guilty that the defendant did not know, when he entered his plea, that he would or might be subjected to a more severe sentence than he anticipated. Stidham v. United States, supra, 170 F.2d 294, 298; United States v. Colonna, supra, 142 F.2d 210, 213; Williams v. United States, supra, 192 F.2d 39, 40; United States v. Shneer, supra, 194 F.2d 598, 600 and cases cited.

■ The burden of showing the existence of adequate grounds for the granting of leave to withdraw a plea of guilty is upon the defendant who seeks that privilege. Bergen v. United States, supra, page 187 of 145 F.2d; Stidham v. United States, supra, page 298 of 170 F.2d; United States v. Shneer, supra, page 600 of 194 F.2d.

■■ The issue of the defendant's guilt or innocence is not involved in an application for leave to withdraw a plea of guilty. Kercheval v. United States, supra, at page 224 of 274 U.S., at page 583, of 47 S.Ct. 71 L.Ed. 1009. Upon such an application a trial court is not required to try the issue of guilt or innocence. The issue for determination is whether the plea of guilty was voluntarily, advisedly, intentionally and understandingly entered or whether it was, at the time of its entry, attributable to force, fraud, fear, ignorance, inadvertence or mistake such as would justify the court in concluding that it ought not to be permitted to stand. United States v. Shneer, supra, page 600 of 194 F.2d; Williams v. United States, supra, page 40 of 192 F.2d; Rachel v. United States, 8 Cir., 61 F.2d 360, 362; Kercheval v. United States, supra, page 224 of 274 U.S., at page 583 of 47 S.Ct., 71 L.Ed. 1009. The issues of fact properly raised by such an application, if at all doubtful, are for the trial court to decide, and its determination may not be set aside or disregarded on appeal unless clearly wrong.

There are general expressions in some of the cases dealing with applications for leave to withdraw pleas of guilty, which might create the impression that a defendant who is displeased with the consequences of having entered a plea of guilty, and who asserts that he made a mistake in so doing and has a good defense and that justice will best be served by permitting him to withdraw his plea, should be accorded that privilege.

While the courts should, of course, do all that reasonably may be done to make certain that a plea of guilty represents the free and voluntary act of a defendant who understands the nature of the offense charged against him and the consequences of his plea, we think there is no reason for the adoption of a soft and complacent attitude toward permitting the withdrawal of such pleas. In the interest of proper law enforcement and an orderly adminis-

tration of criminal justice, one who is accused of crime should be given to understand that he is at perfect liberty to enter a plea of not guilty and to have a trial of the issue of his guilt or innocence, but that if he enters a plea of guilty he will have to abide whatever sentence the court lawfully may impose upon him.

The Supreme Court of Minnesota, in State v. McDonnell, 165 Minn. 423, 427, 206 N.W. 952, 953, a case in which a defendant challenged an order denying leave to withdraw a plea of guilty, used language which appropriately may be applied to the instant case:

> "* * * An appellate court should appreciate the superior opportunity afforded the trial court for understanding the situation [under which a plea of guilty was entered and sentence imposed], and should be slow to hold that its discretion was not wisely exercised. The trial court may have thought that the defendant knew well the import of the proceedings and was dissatisfied only when leniency was not shown, and then desired to take a different course. We hold that there was no abuse of discretion."

The superior opportunity of a trial judge, who "has the feel of the case which no appellate printed transcript can impart," to rule upon a question requiring the exercise of discretion is recognized in Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849.

■ In the present case the appellants had the advice of competent counsel of their own choosing. They could not have misunderstood the charges to which they entered pleas of guilty. They were in possession of the facts underlying such charges. They were informed by the court of the maximum sentences which lawfully might be imposed if pleas of guilty were entered. They were free to let their pleas of not guilty stand and to have a trial. They were offered the opportunity by the Government to plead guilty to one count of the indictment or to stand trial upon four counts. It is apparent that their pleas were voluntarily, understandingly, and deliberately entered and that it was only their dissatisfaction with the sentences imposed which caused them to apply for leave to withdraw their pleas and to stand trial.

The contention of the appellants that they were denied due process because the District Court, in determining what sentences to impose, resorted to information contained in a report of its Probation Officer (which report is properly no part of the record in this case) is, we think, sufficiently answered by the opinion of the Supreme Court in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

The District Court did not abuse its discretion nor did it err in denying the defendants' applications for leave to withdraw their pleas of guilty. The orders appealed from are affirmed.