**J. Paul SHELTON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16354.**

United States Court of Appeals
Fifth Circuit.

June 25, 1957.

572

J. Paul Shelton, in pro. per.

James W. Dorsey, U. S. Atty., Charles D. Read, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and RIVES, TUTTLE, JONES and BROWN, Circuit Judges, en banc.

TUTTLE, Circuit Judge.

Upon a motion for rehearing of the judgment of this Court[1] entered on February 27, 1957, one judge dissenting, this Court determined to consider such motion en banc on the briefs and record with additional briefs requested and supplied by the parties.

The original opinion sufficiently sets out the facts except as to those matters which will be added here.

■ We conclude that the dissenting opinion correctly expressed the relevant definition of voluntariness[2] which if applied to the facts of this case makes it necessary to affirm the decision of the trial court. All agree that for a plea of guilty to be binding on an accused it must be voluntarily made. Whether it was so must, of course, be viewed as of the time it was submitted to the court. As stated by the appellant himself in his supplemental brief "a plea of guilty

is either voluntary or involuntary, either good or bad at the time it is entered, and does not retroactively change character thereafter."

The trial judge on the 28 U.S.C.A. Section 2255 hearing expressly concluded that the defendant "fully and *voluntarily entered a plea of guilty* and received a sentence of one year, upon the recommendation of *himself* and the assistant United States Attorney, concurred in by the judge." (emphasis added) and that he "expressed gratitude to the Court for the sentence."

It is Shelton's contention that this finding either cannot be subsequently made to support the action of the court in receiving the plea or if it can be made subsequently, then it is not here supported by the record of the hearing. In effect it is his contention that if a motivating cause which impelled him to enter the plea was a promise by the Government to seek the dismissal of an additional count in the pending indictment and the dismissal of an indictment pending in another district and to recommend a sentence of a year the plea could not, as a matter of law, be voluntary. As we read the opinion of the majority previously entered in this case, it seems to accept this thesis.

■ The requirement of Rule 11, Federal Rules of Criminal Procedure, 18 U.S.C.A., that a trial court "shall not accept the plea [of guilty] without first determining that the plea is made voluntarily * * *" is mandatory. However, there is nothing in the rule or in the protection it seeks to afford an accused that a certain form of finding must be entered in the record to support the court's discharge of this duty if later questioned. United States v. Swaggerty, 7 Cir., 218 F.2d 875. We think that where in a later inquiry the court finds

[1]. 242 F.2d 101.
[2]. "A correct statement of the applicable rule might be: a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes)." 242 F.2d at page 115.

that the plea was actually made voluntarily this later finding is entitled to the same weight and respect on appeal as is any other fact determination which it is the court's duty to make.

Here the trial record discloses ample facts and circumstances that would fully warrant a finding by the trial court at the hearing that the plea had been voluntarily made. The hearing record also contains facts which when considered with those introduced by Shelton from outside the trial record, warranted the finding here appealed from that the plea had been "voluntarily entered." These facts are set out in the majority opinion previously published, including the statement of Shelton's expression of thanks to the court immediately following the imposition of the one year sentence. In light of the full record, showing that the accused was not only willing but anxious to have his plea accepted by the court, the present claim of involuntariness after he has fully enjoyed the benefit of the dismissal of an additional count in the Atlanta indictment and the nolle prossing of the "more serious federal indictment" (as characterized by Shelton) in Miami—the reinstatement of which is now barred by statutes of limitations—and the imposition of the sentence *requested by him* in the principal case, cannot deprive the plea thus given of its character of voluntariness.

Moreover, in considering the bona fides of this belated claim it is relevant to note that a month after the entry of the plea now asserted to have been involuntary, Shelton wrote to the assistant district attorney who had handled the prosecution a letter relative to the lifting of the detainers in Atlanta and Miami to which the Government had agreed; he concluded: "Thanking you for your efforts in my behalf, and trusting that the entire transaction can be wound up soon, I am respectfully yours, J. Paul Shelton." It was only after the entire "transaction" was "wound up" thereafter and Shelton had reaped the full benefit of his agreement that he claimed for the first time that he had been coerced or overreached.

There is not a line of evidence to sustain a finding that he was in any way misled or imposed on. There was evidence that as a result of his plea he expected to receive favorable treatment. It was for the trial court to decide whether this expectation was so induced as to make the plea of guilty involuntary as a matter of law. It seems to us that on this record it would be almost a contradiction in terms for the trial court to have held that it was. In any event the court found to the contrary. Such finding was certainly not clearly erroneous.

The motion for rehearing is granted; the previous judgment of this Court is set aside and the judgment of the trial court is affirmed.

CAMERON, Circuit Judge not participating.

HUTCHESON, Chief Judge (concurring specially).

I agree with the affirmance of the judgment and with most of what is said in the opinion of the majority affirming it, and ordinarily would content myself with saying so. In my opinion, however, the sheer audacity, not to say effrontery of movant's attempt, under the undisputed facts in this case, while holding on to benefits obtained by him in pleading guilty, to repudiate in the name of due process his acts in doing so and the support accorded his contentions and views in the opinions of the dissenting minority constitute a massive assault upon the validity of countless thousands of sentences entered upon pleas of guilty taken as this one was and the integrity of the federal judicial system, indeed upon the judicial process itself.

Convinced as I am that the contentions of the appellant and the conclusions of the dissenting judges with respect to them are based on demonstrably erroneous assumptions both of fact and of law, I feel compelled for myself and in my own way to do what I can, by stating

as briefly as may be what I regard as the controlling facts in the case at bar and, with equal brevity, the controlling principles of law, to conclusively demonstrate that, as applied to this case, the views of the dissenters, in support of their opinion that the judgment appealed from should be reversed, are without sound basis.

As stated in some of the opinions of my colleagues and more fully disclosed by the record, appellant, who has many times appeared in this court,[1] having on October 20, 1953, been arraigned and advised of his right to assistance of counsel, waived counsel and, having pleaded guilty to the first count of the indictment on which he was convicted below, was given a one year sentence.

Nearly three years later, feeling, as he expressed it in his testimony, some resentment toward the Assistant District Attorney, Mr. Tysinger (Rec. 44), although he felt crummy about welching on his agreement with Mr. Tysinger, because he felt that Tysinger had welched on his agreement on a certain nine months jail time (See the opinion of this court in Shelton v. United States, 234 F.2d 132), filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. He further stated (R. 45) "I still confess I feel somewhat badly about making a motion like this".

After a lengthy hearing (R. 143–150), the District Court stating, "It appearing that the defendant in this case was duly arraigned, voluntarily waived counsel, freely and voluntarily entered a plea of guilty and received a sentence of one year, upon the recommendation of himself and the Assistant United States Attorney, concurred in by the Judge, expressed gratitude to the Court for the sentence, served almost the entire year before making any complaint, no sufficient grounds appear to justify the vacation of his sentence." (R. 150)

Appellant had himself handled the trial of this case (the same case, this indictment superseding indictment No. 19934;

see R. 16) in the District Court for two days in July, 1953 (resulting in mistrial), assisted part of the time by amicus curiae appointed by the court (R. 22, 23, 24) and had of course been observed by the same District Judge who sentenced him on Oct. 20, 1953. In fact the District Court was impressed by the way he handled his trial. Appellant had had a good deal of personal experience in courts (R. 22) and apparently knew well how to conduct himself there.

In the position of having received the full benefit of his plea through the dismissal of the other indictments against him and the limiting of the sentence in this case to one year, a plea which, upon the undisputed evidence, was and was found to have been willingly and understandingly made, appellant is here urging upon this court to substitute itself for the district judge and, completely ignoring the actions and findings of the district judge to determine for itself what is just and right in the premises. That the judges of this court cannot do this under the circumstances of this case is, I think, completely settled by the cases.

In Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009, the Supreme Court laid down, and the courts have uniformly followed, the basic principle which rules this case and requires a judgment of affirmance, a principle with which the views of the dissenters are in irreconcilable conflict:

"A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. United States v.

1. 197 F.2d 827; 205 F.2d 806; 223 F.2d 249; 234 F.2d 132.

Bayaud, C.C., 23 F. 721. But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. \* \* \*" 274 U.S. at pages 223–224, 47 S.Ct. at page 583. Friedman v. United States, 8 Cir., 200 F. 2d 690; United States v. Swaggerty, 7 Cir., 218 F.2d 875, and many others may be cited to the same effect.

Rule 11, Federal Rules of Criminal Procedure,[2] and the cases construing and applying it are but the crystalization[3] into rule of these long standing principles.

Under these principles, it is settled law that, upon a motion under Sec. 2255 to vacate a judgment and set aside a plea of guilty, *the burden of proof is on the movant to establish by a preponderance of the evidence that he has been deprived of some right under the Constitution,* Hearn v. United States, 7 Cir., 194 F.2d 647, *and it has been definitely and repeatedly held that while a court may not accept a plea of guilty without first determining that the plea is made voluntarily with understanding of the nature of the charge,* it is precisely and uniformly held that no particular form or ritual must be followed in making this determination. United States v. Davis, 7

Cir., 212 F.2d 264; Friedman v. United States, 8 Cir., 200 F.2d 690; Williams v. United States, 5 Cir., 192 F.2d 39. In Harris v. United States, 5 Cir., 216 F.2d 953, this court said:

"The issues of fact raised by the motion to vacate the judgment and sentence and to withdraw the plea of guilty were for the trial court to resolve, and its decision may not be overturned on appeal unless it is clearly erroneous and constitutes an abuse of discretion."

while in Williams v. United States, 5 Cir., 192 F.2d 39, 40, this court said:

*"To constitute a sufficient reason for withdrawal of a plea, \* \* \* the circumstances must amount to a fraud or imposition upon the defendant, or a misapprehension of his legal rights."* (Emphasis supplied.)

Obviously, the district judge was in a better position when the plea was taken to observe and determine the defendant's understanding of his plea than are we.[4]

In United States v. Di Martini, 2 Cir., 219 F.2d 807, 808, the court held:

"Defendant has had an extensive hearing, including full testimony, before an experienced and patient trial judge who has decided against him on factual issues; and no question of law remains."

With the law and its markers standing so plainly thus, how, may it be asked,

2. "Rule 11. Pleas
"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty." Federal Rules of Criminal Procedure, Title 18 U.S.C.A.

3. As shown in the notes of the Advisory Committee, "This rule is substantially a restatement of existing law and practice, 18 U.S.C.A. former § 564 \* \* \*; Fogus v. United States [4 Cir.], 34 F.2d 97

(duty of court to ascertain that plea of guilty is intelligently and voluntarily made)."

4. Wigmore, who contributed as much as or more than any other to the idea that judging is administration and who was a friend and defender of the field forces of the law, the trial lawyer and trial judge, has thus correctly pointed this out:
"\* \* \* In the great days of Erskine, Eldon, Garrow, and Denman, the appellate judges were also trial judges. The peculiar American separation of the trial judge from the appellate judge has tended to make the latter more and more of a legal monk, immured in a Carthusian cell and cultivating his little plot of the law's barren logic." 1 Wigmore, Evidence, 118 (1923).

could the dissenting judges have fallen into the error of their way? The short and simple answer is that a reading of their opinions, written in this case, at first for the majority and later in dissent, clearly shows both the source and the cause of the errors into which they have fallen.

The first of these, a wholly unwarranted assumption of fact, is that the district judge, when the plea was taken, did not observe and obey the rule forbidding him to accept the plea, "without first determining that it was made voluntarily with understanding of the nature of the charge", and the consequences of the plea. Nay, more, in the original opinion, written by the dissenting judges in this case when they were in the majority, flatly holding, without I submit, a syllable of evidence to base the holding on, that the district judge did not comply with the mandate of Rule 11, they went on to concede:

> "The present motion would be obviously without foundation, and probably would not have been made, if the district court had complied with the mandate of Rule 11, F.R. Crim.Proc., not to accept the plea of guilty 'without first determining that the plea is made voluntarily with understanding of the nature of the charge.'" (Emphasis supplied.) [242 F.2d 112.]

Starting with this basically erroneous assumption, made, I submit, without any supporting evidence and in the face of the controlling principle that the official action of a district judge must be presumed to have been rightly taken unless clear proof to the contrary is made, the dissenters hold that the district judge failed "to comply with his duty" to observe and obey the governing rule. Proceeding from this basic misapprehension, the dissenters in their first opinion say [242 F.2d 112]:

> "The failure to comply with it (the rule) does cast the burden on the Government to show that the plea of guilty was voluntarily and understandingly made. That it was under-

standingly made in this case is not controverted, but the question is, was the guilty plea made voluntarily." (Emphasis supplied.)

Dealing with the same matter in their dissenting opinion and again making the same factual assumption that the district judge had failed "to comply with his duty" of determining before accepting it that the plea was voluntarily made, they change their first statement only to say, "The failure to comply with it, however, keeps in existence the burden originally on the Government to show that the plea was voluntarily and understandingly made". (Emphasis supplied.) [246 F.2d 578.]

Proceeding upon and from this assumption and pronouncement that the district judge had failed "to comply with his duty" in accepting the plea, the appellant and the dissenters go on to state that, as a result, the burden was on the United States to prove that the plea was voluntarily made instead of, as the law provides, on the petitioner to show the contrary. Finally, the dissenters fall into the fatal basic error of declaring, in the teeth of the authorities cited and quoted from above, that a plea of guilty is the same as an extra judicial confession of guilt and is to be regarded and dealt with in accordance with the rules governing confession. As pointed out above, the exact contrary of this is true. A plea of guilty is not a confession; it is a conviction. Proceeding upon and from this error, which in my opinion is the head and front of their whole misapprehension, they further compound it with the error of declaring, in the face of the authorities above cited holding that this is not so, that it is the duty of a judge when a plea of guilty is entered to determine "that the plea is so voluntarily made as to furnish reliable and trustworthy testimony that the accused is in fact guilty. For if, on judicial inquiry, the conclusion is that it was that promise, whether subsequently made good or not, that really brought about the guilty plea, then the plea was congenitally defective because it was the product of a

decisive, potent, but extraneous force," [246 F.2d 579] and this in the teeth of the authorities that *the question of guilt or innocence is not to be examined on a motion to vacate a sentence or on the entry of the plea itself.*

Upon the basis of these views above set out, the dissenters come up with this final view, that *it is a fundamental requirement of our system that if a promise or representation entered into the matter at all, a plea of guilty is not good.* Conscious, however, that in the present state of the law they are not on completely sound ground but clinging to the basic error that a plea of guilty is an extra judicial confession, the opinion, after stating: "Perhaps a plea of guilty induced in part by promises may nevertheless be trustworthy" goes on to say [246 F.2d 580]:

> "But certainly such inducement adds emphasis to the burden of the district court to ascertain that the main, the predominant, motive of the defendant for pleading guilty is that he intends freely and voluntarily to confess that he is guilty."

Viewed apart from their confusion of a plea of guilty with an extra judicial confession, I have no fault to find with this statement. The difficulty in the way of its use in this case is *that upon this record it must be presumed that the district judge did do all that was necessary to support his determination that the plea was voluntary,* and in the absence of proof that it was not voluntary, the mere fact that there was a preliminary discussion with the Assistant United States Attorney as to the sentence he would recommend, cannot prevent the plea from being voluntary. Further, following their incorrect conclusion that a plea of guilty is in essence the same as an extra judicial confession, a view denied by all the authorities, the appellant and the dissenters, making much of the facts, as stated by them: that he

had had one trial resulting in a mistrial; that he had offered to waive a jury and be tried before the court; *that on the hearing of the present motion he offered to prove his innocence and his offer was declined* by the court; that he has not once confessed his guilt except by plea of guilty; contend that this court is authorized to, and, notwithstanding that it is in the face of the express finding of the district judge to the contrary, must find *that the defendant in entering his plea of guilty was not voluntarily pleading guilty and the district judge knew that he was not.* Upon this basis, and this basis alone, the dissenting opinion returns to the basically unsound conclusion with which it began, "The entry of a judgment of conviction upon such a plea of guilty was, we think, beyond the pale of due process".

It is my considered opinion, on the contrary, that to allow the appellant to prevail in this case would be to unwarrantedly and unjustly put the district judge in error and to deny the government the due process to which it, as well as a defendant, is entitled. As we have pointed out in several opinions,[5] justice is not a one way street. Due process is not for the defendant alone. The government, though denied the right of an appeal, has the same fundamental right to due process as the defendant has. This will certainly not be accorded it here if, contrary to every equitable principle known, the appellant can on this record, as he contends and the dissenting judges agree he can do, while holding fast to the benefits of his plea, repudiate it.

RIVES and BROWN, Circuit Judges, (dissenting).

The petition for rehearing makes no attack on that part of the original opinion[1] which accords the movant, appellant, an opportunity to attempt to show that his conviction was invalid;[2] and that is not questioned in the opinion on

---

5. Decatur v. Hiatt, 5 Cir., 184 F.2d 719; Bowen v. United States, 5 Cir., 192 F.2d 515; Kimbrough v. United States, 5 Cir., 226 F.2d 485.

1. Reported in 242 F.2d 101, et seq.
2. See 242 F.2d 110, 111, 112.

rehearing. Since, however, that ruling was an important departure from our decision in Van Meter v. Sanford, 5 Cir., 99 F.2d 511, and from the other cases listed in footnotes 8, 9 and 10, to the original opinion,[3] we would call attention that it receives inferential support from a decision of the Supreme Court rendered only two days before the date of the original opinion. Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393.

The intention of the original opinion was not, as the majority now reads it, "to accept the thesis that if a motivating cause which impelled him (the accused) to enter the plea was a promise by the Government to seek the dismissal of an additional count in the pending indictment and the dismissal of an indictment pending in another district and to recommend a sentence of a year the plea could not, as matter of law, be voluntary." Instead, the former dissenting opinion had accurately defined " * * * the principal thesis proclaimed by my colleagues: that a plea of guilty is subject to impeachment merely because it has been induced by a promise of recommended leniency," 242 F.2d 113.

Speaking of the mandate of Rule 11, Federal Rules of Civil Procedure,[4] the original opinion said:

"We doubt, however, whether that requirement is so fundamental as to be availed of on a writ of coram nobis if the accused's voluntariness and understanding in fact be proved. The failure to comply with it, however, does cast the burden on the Government to show that the plea of guilty was voluntarily and understandingly made. That it was understandingly made in this case is not controverted, but the question is, was the guilty plea made voluntarily?"[5] 242 F.2d 101, 112.

Again it was said in the original opinion:

"If a plea of guilty is made upon any understanding or agreement as to the punishment to be recommended, it is essential, we think, that, before accepting such plea, the district court should make certain that the plea is in fact made voluntarily. Otherwise, the plea is subject to impeachment as having been induced by a promise of recommended leniency." 242 F.2d 101, 113.

The majority opinion states:

"The hearing record also contains facts which when considered with those introduced by Shelton from outside the trial record, warranted the finding here appealed from that the plea had been 'voluntarily entered.' These facts are set out in the majority opinion previously published, including the statement of Shelton's expression of thanks to the court immediately following the imposition of the one year sentence."

Thus we all agree that the facts are correctly set forth in the former opinion, but from those facts we draw diametrically opposite conclusions, for it seems to us that they show that the petitioner has met a burden which was not his and has positively and affirmatively proved

---

3. See 242 F.2d 110.

4. "The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." Rule 11, 18 U.S.C.A. In footnote 11 to the original opinion, attention was called that the requirement of that rule was simply a restatement of the pre-existing law. It was well said in 2 Wharton's Criminal Evidence, 11th ed., § 587, p. 976: "No court ought to accept a judicial confes-

sion as final until a most searching investigation has been made into all the conditions and surrounding circumstances."

5. We think now that the second sentence of that quotation should be corrected to read:

"The failure to comply with it, however, keeps in existence the burden originally on the Government to show that the plea was voluntarily and understandingly made. 2 Wharton's Criminal Evidence, 11th ed., § 587, p. 974, Note 4."

that the plea of guilty was not voluntarily made.

We believe, therefore, that our differences arise not from the facts themselves but from our concept of what constitutes voluntariness. The definition of voluntariness contained in footnote 2 to the opinion of the Court on this rehearing seems to us entirely too circumscribed. With deference, we submit that a plea of guilty, a confession in open court,[6] is subject to no less rigorous tests than those applicable to simple confessions. In either case, voluntariness requires that the confession be not induced by a promise or a threat, and more, that it be in fact voluntarily made. Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131. The reason of the requirement in each instance is to make certain that the confession is *trustworthy* testimony of guilt and to avoid accepting a plea of guilty from an accused who may be innocent. 3 Wigmore on Evidence, 3d Ed., § 822. The term "voluntary," as Professor Wigmore points out, is misleading.

> "All conscious verbal utterances are and must be voluntary; and that which may impel us to distrust one is not the circumstance that it is involuntary, but the circumstance that the choice of false confession is a natural one under the conditions." 3 Wigmore on Evidence, 3d Ed., § 824, pp. 251, 252.

We recognize the existence of the practice stated by our Brother Tuttle in his dissent from the former opinion:

> "It is generally known that the great bulk of criminal cases are disposed of by pleas of guilty made after some discussion between the defendant and/or his counsel and the prosecuting attorney in which the latter frequently makes some commitment as to the sentence he will recommend or as to other charges or prosecutions he will drop; if this

were not so, or if this Court holds that it may not be so, there would be few inducements for any person to plead guilty." 242 F.2d 101, 115.

The very statement of that practice, however, concedes that such promises or commitments *are inducements* for the accused to plead guilty. Such inducements in any particular case may be sufficient to elicit an untrue plea of guilty. The prevalence of that practice demonstrates the importance, indeed the imperative necessity, for the court itself to determine that the plea is so voluntarily made as to furnish reliable and trustworthy testimony that the accused is in fact guilty. For if, on judicial inquiry, the conclusion is that it was that promise, whether subsequently made good or not, that really brought about the guilty plea, then the plea was congenitally defective because it was the product of a decisive, potent, but extraneous force.

If, as the Court now holds (see note 2 on rehearing and notes 2 through 11, original dissent, 242 F.2d 101, at page 114), threats, misrepresentations or improper promises may vitiate the plea, a serious question, nowhere answered, arises: *Why* should any of these factors destroy the plea? Surely, it is not a sort of retributive punishment for wrongfully using force, uttering threats, or the making or breaking of promises. The vice is not that a misrepresentation was made and because of that the bargain may be rescinded. The vice is that because of that *representation* the accused was led to announce his guilty plea. The vice is not that threats or force were employed so that all must be undone because some officer violated the civil rights of the accused. The vice is that, because of those actions working on mind, body and will of the prisoner, he was led to take the step of making a guilty plea and which he otherwise would not have done. If, as the Court now so

---

6. See authorities collected in footnote 12 to original opinion, 242 F.2d 112, to which many others might be added. See

2 Wharton's Criminal Evidence, 11th ed., § 587, pp. 973–976.

plainly holds, the impact of such influences may undermine a guilty plea, upon what ground can any other equally effective extraneous factor be considered innocuous? The question is not: Was a promise made, and if so, was it kept? Rather it is: Was the promise as made and kept the real motivating cause for the plea? If it was, then, like one induced by the third degree or the making of false and untrue representations, it cannot stand.

We are dealing here not with any logician's exercise in which we carve up these variables into neat little categories. We are dealing here not with whether the accused "was in any way misled or imposed on." We are dealing with a fundamental requirement of our system that the machinery of the law in no way be used to bring about the guilty plea with its awful finality unless it represented the genuine free expression of the prisoner's will. Anything less means, if history is our guide, that it is man and his freedom, not the unfortunate prisoner in the dock, who is "imposed on."

Both promises and threats are inducements to untrue confessions and pleas of guilty. The sufficiency of either a promise or a threat to elicit an untrue plea depends upon the circumstances of the particular case. Perhaps a plea of guilty induced *in part* by promises may nevertheless be trustworthy, but certainly such inducement adds emphasis to the burden of the district court to ascertain that the main, the predominant, motive of the defendant for pleading guilty is that he intends freely and voluntarily to confess that *he is guilty.*

From the time the indictment is presented or information filed to the entry of the judgment of conviction, and throughout all forms of review of that judgment, the primary matter to be determined is the guilt or innocence of the accused. We err grievously when we allow ourselves to be diverted by other inquiries, such as whether the accused made a good bargain and whether the bargain was kept; the sole inquiry should remain, was the plea of guilty made under such circumstances as to constitute it reliable and trustworthy evidence of the accused's guilt of the offense with which he was charged.

With deference, we submit that the only answer that can be reached on the present record is "No." The accused had from the beginning contended that he was innocent; on a plea of not guilty, he had undergone one trial until a mistrial was declared through no fault of his; he had then offered to waive a jury and be tried before the court, and the Government had declined; on the hearing of the present motion, he offered to prove his innocence and his offer was declined by the Court;[7] not once has he in any way confessed his guilt, except by the plea of guilty under attack; and it is conceded that he entered that plea in reliance upon not one, but several, material promises on the part of the Government. To this good day the record, as supplemented upon the last hearing, discloses no reliable and trustworthy reason to believe that the accused was guilty of the offense for which he was convicted.

The entry of a judgment of conviction upon such a plea of guilty was, we think, beyond the pale of due process. We therefore, respectfully dissent.

7. See 242 F.2d 103.