UNITED STATES of America,
Appellee,

v.

Walton I. FRONIABARGER, Appellant.

UNITED STATES of America,
Appellee,

v.

Walton I. FRONIABARGER, Appellant.

Nos. 72–1182, 72–1183.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1972.

Decided Oct. 17, 1972.

Lewis E. Pierce, Kansas City, Mo., for appellant.

Bert C. Hurn, U. S. Atty., Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Van OOSTERHOUT and ROSS, Circuit Judges.

VOGEL, Circuit Judge.

On June 18, 1970, Walton I. Froniabarger, defendant-appellant herein, was charged in case No. 23143–4 in a 30-count indictment involving some 17 defendants, of which appellant was one, and in which indictment he was named in 11 of the counts. All dealt with narcotics violations. On August 6, 1970, in case No. 23182–4, appellant was charged in a two-count indictment in which he was the only named defendant and in which other narcotics violations were charged. At arraignment, and represented by employed counsel, appellant entered pleas of not guilty. Judge Hunter, the trial judge, carefully explained appellant's rights to him. Subsequently thereto Assistant United States Attorney Calvin K. Hamilton and Harold Leap of the Bureau of Narcotics and Dangerous Drugs agreed with the appellant that if he would cooperate and work with BNDD agents, the government would consent to appellant's entering a plea of guilty to only a possession count in each indictment and would fully advise the court at the time of sentencing as to the extent of appellant's cooperation. All remaining counts in the two indictments involving appellant were to be dismissed. Thereafter, on September 11, 1970, in case No. 23182–4 appel-

lant changed his plea as to Count 1 of the indictment from not guilty to guilty of what amounted to mere possession of a narcotic drug, in violation of 26 U.S. C.A. § 4704(a), the maximum penalty for which was ten years' imprisonment and a $20,000 fine.

On January 11, 1971, in case No. 23143–4 appellant changed his plea as to Count 15 from not guilty to guilty. In each instance he was represented by his counsel and in each instance the trial court was particularly careful to see that all the provisions of Rule 11, F.R. Crim.P., regarding pleas were carried out.

We have read the transcript from which we are forced to conclude that the changes of plea were made voluntarily, with complete understanding of the nature of the charge in each count, and of the consequences of the plea. On each occasion Judge Hunter satisfied himself that there was indeed a factual basis for the plea. We cannot help but commend the care which he observed in accepting the changes of plea. The remaining counts in the two indictments were subsequently dismissed insofar as this appellant was concerned.

March 8, 1971, was set for sentencing in appellant's two cases. On that date he appeared with his counsel but upon being shown by his counsel a letter from Mr. Hamilton, an Assistant United States Attorney, to the court, he " * * * disagreed most violently with some of the things in the letter" and promptly disappeared and was not apprehended until the following December 1971. Thereafter appellant moved to set aside his guilty pleas in the two indictments. His motion came on for hearing on January 18, 1972, before Judge Hunter. There followed a complete evidentiary hearing at which appellant testified and introduced the testimony of other witnesses. At the hearing on his motion to set aside his guilty pleas to Count 1 and Count 15 of the original indictments, the appellant testified that both before and after his guilty pleas

had been entered and received Harold Leap, BNDD agent, had promised that if he cooperated with the government he would get probation and not serve any time in the penitentiary. Leap testified and denied having promised probation, but conceded that the agreement with the appellant was that Leap would personally furnish the information regarding appellant's cooperation to the probation officer so that it would be available to the sentencing judge. He said this promise was kept.

After the hearing, Judge Hunter dictated his findings into the record in part as follows:

"I am completely in agreement with counsel in this case and with the witness who testified, namely, Mr. Leap, that Mr. Froniabarger is an intelligent, perceptive, reasonably knowledgeable person who is very capable of understanding what is being conveyed to him in normal English. I find from the evidence in this case that the arrangement between Mr. Froniabarger and Mr. Leap was that if Mr. Froniabarger would become a reasonably cooperative citizen with the Bureau of Narcotics and Dangerous Drugs and Mr. Leap as its supervisor, and in that posture endeavor to help the Bureau and Mr. Leap to gain information and intelligence concerning illegal drug activities that in return for that Mr. Leap would fairly, faithfully, and accurately convey that fact in some reasonable detail to the probation office here in the Western District of Missouri in order that that office could make at least in summary fashion the fact of that cooperation and some of the detail of it available to this Court where it would in the customary practice be considered by this Court in determining what an appropriate sentence would be in Case No. 23143 and in Case No. 23182.

"I further find that Mr. Leap explained on more than one occasion to Mr. Froniabarger that the customary procedure for getting information to a sentencing judge in the Federal Court

system was through the method of conveying of information to the probation office which, in turn, would convey at least the substance of it in its pre-sentence report to the sentencing judge. I am convinced from all the evidence in this case that Mr. Leap did not promise Mr. Froniabarger that in return for the mentioned cooperation Mr. Froniabarger would be assured of probation, nor did Mr. Leap promise Mr. Froniabarger that he would get or obtain probation for him. I base this first upon the credibility issues as I weigh them which are sufficient for my finding and sufficient to persuade me and also I recognize this is the common sense situation of it well known by Mr. Leap. Mr. Leap is an old hand and knows that he could not promise anybody that he could obtain probation for them from the judge without overstepping what he would know he could accomplish. At best, he knows he could only recommend and could not guarantee to obtain probation. Apparently, in this case, according to his testimony, he did not recommend or agree to recommend, but simply to convey certain information to the probation office which might help a judge to consider or motivate a judge to consider probation, at least to in some respect mitigate what the sentence might otherwise be.

"I think Mr. Froniabarger simply wants to make more of his understanding with Mr. Leap than the actual facts will permit. Mr. Froniabarger is obviously in a bad situation, because he faces sentencing in these two cases, he has cooperated to a substantial extent with the Bureau of Narcotics and Dangerous Drugs and with Mr. Leap, and apparently has suffered some public exposure, unfortunately for him, as a result of that. I believe him when he tells me that he thinks his life may be endangered by it, because those are the hard facts of the illicit drug situation in this or any

other area. It is dangerous to reveal to be an informant.

"I simply do not believe Mr. Froniabarger when he said Mr. Leap specifically promised him probation. I think, as I indicated, he simply wishes that were the fact in view of the danger to himself from this cooperation."

The court thereupon denied the motion to change the guilty pleas to not guilty and after ascertaining that the government through Mr. Leap and the probation office had complied with the promises made, proceeded to arrange for sentencing on the two counts.

In passing sentence on the appellant in connection with the two cases, Judge Hunter was again meticulously careful and most considerate of appellant's rights. He completely disregarded the statements and recommendations contained in the Hamilton letter; he treated the Count 15 charge as a first offense, whereas it could well have been considered as a second offense which would have called for a maximum of 20 years' imprisonment. Out of consideration for the cooperation of the appellant with the government in other criminal matters, the court also chose to sentence the appellant to only 8 years' imprisonment in each case, directing that the sentences be served consecutively for a total of 16 years. Appellant could very well have been sentenced to 10 years on each count.

■ Appellant's first contention is that there was a failure to comply with the requirements of Rule 11 of the Federal Rules of Criminal Procedure in that the court was unaware of the promises made which obviously induced the guilty pleas to Count 1 and Count 15. The contention borders on the frivolous. How the trial court could know of something the defendant refused to tell him and specifically denied is not explained. Judge Hunter carefully complied with every provision of Rule 11. Appellant cites and relies on Shelton v. United States, 1958, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579, reversing 246 F.2d 571.

The case is of no help to the appellant herein. The Supreme Court there reversed the Fifth Circuit on a confession of error by the Solicitor General that the plea of guilty might have been improperly obtained. That is not the situation here. True enough, the court did find that promises had been made to the appellant, but only to the extent that if he, the appellant, cooperated the court, through Mr. Leap and the probation office, would be informed of that cooperation.

Appellant's second contention is that the government broke its promise to recommend clemency and therefore his plea was not voluntary. Judge Hunter's findings after the detailed evidentiary hearing were that no promises such as probation had been made or relied on by the appellant, and that the only promise given appellant was that in exchange for his cooperation they would call the attention of the sentencing court to such cooperation.

 Appellant's third point seems to be that his plea of guilty was not voluntary because he understood he would receive probation instead of confinement. On substantial testimony, Judge Hunter found against the appellant on this contention and, in addition, specifically found that the appellant understood the promise made to him but really wanted to make more of it than was testified.

Santobello v. New York, 1971, 404 U. S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, is the Supreme Court's most recent expression on the question of plea bargaining. Therein, the majority, speaking through Mr. Chief Justice Burger, said, at page 262 of 404 U.S., 92 S.Ct. at 499:

> "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

Here there were indeed promises (to dismiss all counts excepting the two to which pleas of guilty were received and to advise the court through the probation office of the extent of cooperation given by appellant). These promises were fully and completely complied with.

Affirmed.