**Richard C. MARTIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17053.**

United States Court of Appeals Fifth Circuit.

June 18, 1958.

Chester E. Wallace, Atlanta, Ga., for appellant.

W. L. Longshore, U. S. Atty., Birmingham, Ala., William G. West, Jr., Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

■ The appellant along with seven other defendants was indicted under the following counts: Count one charged defendant with armed robbery and the taking of $86,476 in violation of 18 U.S.C.A. § 2113(d), carrying a maximum penalty of 25 years. Count two charged him with knowingly receiving and disposing of money with intent to steal, in violation of 18 U.S.C.A. § 2113(e), carrying a maximum penalty of 10 years. Count three charged him with a kidnapping in conjunction with the bank robbery and this carried a maximum death penalty. Count six charged the defendant with transporting foreign securities or money in excess of $5,000 in violation of 18 U.S.C.A. § 2314, carrying a maximum of 10 years. Count eight charged the defendant with a conspiracy to commit the offenses in counts one, two and three in violation of 18 U.S.C.A. § 371, carrying a maximum of 5 years.

The defendant pled guilty and was sentenced to 30 years. This appeal arises from two motions by appellant to correct and vacate sentence. His claims are that the trial court failed to hold an inquiry to determine whether the guilty plea was voluntary and it in fact was not because of inducement, bargains and duress, that the court appointed counsel represented other defendants with conflicting interests with appellant, and that 25 years is the maximum sentence the court could legally impose under the indictment. The trial court held a hearing on these motions and by separate findings of facts and law denied appellant's motions.

At the arraignment the court appointed Walter Merrill, an attorney of over 20 years experience whose qualifica-

tions were stipulated by appellant's present counsel. At this time appellant pled not guilty. The principal factual dispute is between appellant's testimony and contentions at the hearing on the above motions and Merrill's as to what happened at a conference held before the trial, after which defendant changed his plea to guilty. Appellant testified as follows:

"Q. What induced you to change your plea? A. My court-appointed attorney informed me that I was charged with bank robbery, and unless I plead guilty, I stood a chance to get the electric chair.

"Q. Then you changed your plea by inducement? A. Yes, sir, I would say that."

On cross examination he testified:

"Q. Describe the time and the occasion on October 31st, when you say he induced you to enter a plea of guilty? A. I was in the Calhoun County Jail at Anniston, Alabama. The marshal came over and got me and took me to the place where they locked us up in the court house, and Mr. Merrill talked with me, and then he left me and came back, and he says: 'I've talked with the District Attorney, and Martin, unless you all plead guilty, they are going to give part of you the electric chair', and he says 'If you want to plead guilty and take the benefit of the doubt, take the court's leniency', or something to that effect, I don't recall the exact words, 'I can plead you guilty and get you off without that.'

"He didn't specify how many years he would get me off with.

\*    \*    \*    \*    \*

"Q. Didn't your court-appointed counsel, Mr. Walter Merrill, tell the group of you at the Anniston court house, that the only concession that the District Attorney, Mr. Frank Johnson, would agree to without a trial in this cause would be that if you plead guilty to all the counts outside of count three, the capital

account, [sic] he would move to dismiss the capital account, [sic] Mr. Martin? A. To the best of my knowledge that was not his words, no.

"Q. What were his words along that line? A. That if we wanted to cause the government the expense of a trial that some of us would get the electric chair without a doubt, and the others would be salted away in the penitentiary for a long time, I believe was about the way he said it.

"Q. Did he say you would get the electric chair? A. He was talking to me and Mr. Andrews at the time, looked directly at the two of us."

Mr. Merrill testified as follows:

"Q. On this occasion, second occasion at Anniston, Alabama, when you talked to the entire group, please state your general recollection as to the conversation that was had between you and these defendants. A. I told them that the case was called for trial, and that the Judge wanted to know what we were going to do.

"I told them that I had talked to the District Attorney, Mr. Frank Johnson, who is now a judge, and that I had attempted to work out some agreement with him as to punishment, and that I couldn't get anywhere with him; that the only concession he would make was that if a plea of guilty was entered, he would dismiss the count that carried the capital punishment.

"And that I couldn't get any recommendation from Mr. Johnson concerning the length of imprisonment, but that he would dismiss the capital count.

"I told them that from what I knew of the evidence, that Mr. Johnson had let me know that he had, and that I had obtained from other sources, that they would be convicted. And that it had been my experience in the Federal Court that

if a plea of guilty was entered, the punishment was not as severe as if they pleaded not guilty and were convicted; that I couldn't tell them what the punishment would be, but that had been my experience over the years.

"I told them that I didn't care whether they entered a plea of guilty or not, that I was leaving it up to them, and that I was going out of the room, to tell the Judge that they were making a decision, and that I would be back in about ten minutes, at which time I would ask them to let me know which, if any, wanted to plead guilty, and which if any wanted to remain under their plea of not guilty.

\* \* \* \* \*

"Q. Was there any duress or efforts made in your presence about inducing these pleas of guilty? A. Nothing other than what I have stated.

"Q. I'm going to apologize to you for asking this question. You yourself did not threaten or induce them to make that, did you? A. I neither threatened nor gave them any inducement that I have not already stated."

Rule 11, Fed.Rules Crim.Procedure, 18 U.S.C.A., states that the court shall not accept a plea of guilty without first determining that the plea is made voluntarily. The court below, which was the same as the trial court in the original case, found as facts that the only concession which the United States Attorney would agree to was to dismiss the capital count if they pled guilty and no offer or inducement as to any punishment was in fact given. The court in specific findings of fact found that the guilty plea was in fact voluntarily made with an understanding of the nature of the charges contained in the indictment and that the appellant had an opportunity to communicate with the court if he desired to do so.[1]

1. "\* \* \* 2. The defendant had his preliminary hearing before the United States Commissioner on September 17, 1955, at Houston, Texas, and was subsequently removed to this District.

The appellant contends that the final holding of Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579, would cause the plea in this case to be invalid. This is based on the theory that the dissenting opinion of this Court is now the law of the case. In the first opinion, 5 Cir., 242 F.2d 101, this Court held Shelton's plea was not voluntary, one Judge dissenting. This was reversed by the Court, en banc, two Judges dissenting, 5 Cir., 246 F.2d 571, with the former dissent becoming the majority. The Supreme Court reversed in a memorandum opinion stating: "Upon the consideration of the entire record and confession of error by the Solicitor General that the plea of guilty may have been improperly obtained, the judgment of the United States Court of Appeals for the Fifth Circuit is reversed and the case is remanded to the District Court for further proceedings."

This reversal does not necessarily mean that principles announced in the dissenting opinion of this Court have

"3. Prior to the arraignment of the defendant, the Court wrote the Honorable Walter Merrill in regard to his availability to represent some of the defendants in this cause. (R. 61). The Court recognizes Mr. Merrill as one of the ablest practitioners of criminal law in this district and as one who has been practicing since 1934, and whose qualifications were admitted by defendant's counsel. (R. 47–48).

"4. On October 11, 1955, the defendant appeared before the Court, at Anniston, Alabama, for the purpose of arraignment and was without counsel. The Court apprised said defendant of his right to have counsel assigned to him without cost, and said defendant requested counsel. The Court appointed Mr. Merrill to represent the defendant. (R. 22–23). The defendant was served in open court with a copy of the indictment, and the Court recessed in order that Mr. Merrill would have an opportunity to explain the indictment to the defendant and to the others for whom he had been appointed. (R. 24–25). After recess, the Court asked Mr. Merrill if he had acquainted the defendants with the charges contained in the indictment against them, to which he answered, 'I have, your Honor'. (R. 27). At this time, Mr. Merrill entered a plea of not guilty on behalf of the defendant.

"5. Between the arraignment and trial dates, Mr. Merrill talked several times with the defendant-movant and the other defendants whom he represented about their respective implication in this cause and elicited from them their respective theories and versions of the facts. With these facts in mind, and viewing Mr. Merrill's statement that there was no conflict of interest between the various defendants whom he represented, that he was aware of and the fact that the defendant-movant made no affirmative move to inform the Court of any supposed conflict of interest at the arraignment or the trial date (this being advanced for the first time in the defendant-movant's motion of October 3, 1957), the Court finds that no conflict of interest was here present between the defendant-movant and the other defendants whom Mr. Merrill represented. (R. 53–54).

"6. On October 31, 1955, Mr. Merrill conferred with the defendants for whom he had been appointed and conveyed to them the only concession which the United States Attorney would agree to—that he would dismiss the capital count if they pled guilty. No offer or inducement as to any punishment was in fact given. After leaving the defendants to make up their minds, Mr. Merrill returned and asked defendant-movant what his desire was and defendant-movant voluntarily answered that he desired to plead guilty. (R. 57–59). The defendant-movant, through his court-appointed counsel, in open court then withdrew his plea of not guilty entered at arraignment and entered a plea of guilty to all counts except count three. (R. 28). The Court finds that this plea was in fact voluntarily made with an understanding of the nature of the charges contained in the indictment and that said plea stood as a conviction against the defendant-movant on counts one, two, six and eight, and was not in fact a plea of guilty solely to the general charge of bank robbery.

"7. The United States Attorney moved to dismiss count three, which motion was granted by the Court, and the Court then on defendant's plea of guilty sentenced him to thirty (30) years in the custody of the Attorney General. (R. 30). At the time of this sentence, defendant-movant had an opportunity to communicate with the Court if he so desired. (R. 63). As was its duty so to do, the Court considered a full and complete presentence report on this defendant together with the others who were then sentenced prior to the entering of said sentence and judgment."

become the law or that the law expressed by this Court was erroneous, since the Supreme Court rendered no opinion on the subject. The Supreme Court seems to have reversed because it found that the plea "may have been improperly obtained" and sent the case back for a further determination of that issue. The Court did not hold, nor did the dissenting opinion by Judge Rives in this Court hold that "if a motivating cause which impelled him (the accused) to enter the plea was a promise by the Government to seek the dismissal of an additional count in the pending indictment and the pending indictment in another district and to recommend a sentence of a year, the plea could not, as a matter of law, be voluntary." In fact that opinion conceded that "perhaps a plea of guilty induced *in part* by promises may nevertheless be trustworthy." 246 F.2d 571, 580. So far as we know no court has held that any such concession made by the prosecution necessitates a finding that the plea was involuntary. The crucial issue appears to be whether, with all of the facts before him, including the advice of competent counsel, the plea was truly voluntary. The Supreme Court lays down no other test. The fact findings of the trial court as to the voluntariness should be reviewed on this issue on the clearly erroneous test.

In Tabor v. United States, 4 Cir., 203 F.2d 948, certiorari denied 345 U.S. 1001, 73 S.Ct. 1148, 97 L.Ed. 1407, the defendant entered a plea of guilty to the charges contained in two counts and the remaining count was dismissed. The Fourth Circuit in overruling defendant's motion to vacate sentence stated that the defendant thoroughly understood what he was doing entering a plea of guilty on two counts of the indictment "in consideration of" the remaining count being dismissed.

The conflict of interest point is not detailed in any way by appellant in his brief and it is difficult to ascertain just what was the conflict among the defendants. The trial court found as a fact that there was none. The appellant failed to raise the point when counsel was appointed for him at trial or at any time during his initial trial and not until the present motions. The court-appointed attorney stated there was no conflict of interest among the various defendants to the best of his knowledge. Also, of course, since the Court has found the guilty plea was voluntary the appellant must be said to have waived the conflict of interest theory.

On the final point that the maximum sentence that could be given was 25 years, the trial court found that the various offenses alleged in the counts were not merged with each other and these separate offenses could be punishable by consecutive sentences. This position is supported since count eight alleged a conspiracy to violate count three, the kidnapping count, as well as the bank robbery counts. This Court has also held in Heflin v. United States, 5 Cir., 251 F.2d 69, that receiving stolen money and conspiracy are offenses separate from bank robbery.

The judgment is affirmed.