Nathaniel BROWN, Appellant,

v.

Dr. George J. BETO, Director, Texas De-
partment of Corrections, Appellee.

No. 23821.

United States Court of Appeals
Fifth Circuit.

May 12, 1967.

Nathaniel Brown pro se.

Gilbert J. Pena, Asst. Atty. Gen., Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., for appellee Dr. George J. Beto.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

WISDOM, Circuit Judge:

This habeas proceeding involves (1) the prisoner's challenge to his commitment under two sentences when, if either is valid, he would not be entitled to immediate release; (2) the validity of a plea of guilty that apparently resulted from a plea agreement between the prisoner and the prosecutor; (3) a general charge that the prisoner's attorney was incompetent. We affirm the district court's dismissal of the petition for habeas corpus.

I.

In August 1960 in the District Court of Dallas County, Texas, the petitioner, Nathaniel Brown, was charged in two indictments with the offense of robbery by firearms. The offense carries a possible death penalty. Vernon's Penal Code, Art. 1408. The court appointed counsel to represent Brown. Brown went to trial in No. 1768, was found guilty by the jury, and was sentenced to 25 years imprisonment. Several weeks later, in the other case, No. 1767, the state moved to strike the firearms count of the indictment so that Brown was then charged only with robbery by assault, an offense carrying a term of five years to life imprisonment. He pleaded guilty. The court imposed a sentence of thirty-five years on this charge to run concurrently with the other sentence of twenty-five years. Brown took no appeal from either of the convictions or sentences.

In August 1965 Brown filed an application for writ of habeas corpus in the Southern District of Texas, Houston Division. The district court appointed Mr. Alvin R. Owsley, Jr., as counsel to represent Brown. After a two-day evidentiary hearing, the district court found that Brown's testimony in regard to his confession was incredible; that he was not denied effective assistance of counsel; and that the plea of guilty was voluntarily entered. The court denied the petition. The district judge thanked Mr. Owsley for his services to the prisoner and to the court and relieved him of any further obligation except that of filing a notice of appeal. Brown, in proper person, appeals in forma pauperis from the judgment below.

The petitioner's two-page handwritten brief on appeal does not clearly articulate the basis for his attack on the two convictions. To understand his contentions, therefore, we turn to the transcript of the hearings. His attorney, in his opening statement to the court attacked both convictions on the following grounds: (1) Brown was convicted twice as a result of a coerced confession; (2) had no counsel at the time the confession was allegedly extorted; and (3) did not have the effective assistance of counsel. The third contention is subdivided into (a) the lack of effective assistance of counsel during his trial in Cause No. 1768 and (b) the lack of effective assistance of counsel during his guilty plea. Neither Brown nor his attorney specifically contended that the guilty plea was the result of bargaining but it is apparent that this contention was at the heart of the argument that the plea was not voluntary. The Assistant Attorney General representing the state at the habeas hearing brought the issue into the open:

"I think that we can safely assume, Your Honor that Nathaniel Brown, who was charged with two indictments of robbery by firearms, which carries the death penalty, knew that he could

get the death penalty. He was tried once by a jury, and the jury gave him 25 years. He must have known that if he was tried again he could receive the death penalty.

"I do believe that the Court can assume from that, from the guilty plea, that he thought it best to cop out and not take a chance with the jury again."

## II.

■■■ The sentence of thirty-five years imposed in Cause No. 1767 runs concurrently with the sentence of twenty-five years in No. 1768. As the law now stands, if the Court should determine that the thirty-five year sentence is constitutionally valid, it would be premature for the Court to determine questions involving the lawfulness of the prisoner's detention in No. 1768. The Supreme Court stated the controlling principle in McNally v. Hill, 1934, 293 U.S. 131, 137, 55 S.Ct. 24, 27, 79 L. Ed. 238:

> "There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention and no suggestion of such a use has been found in the commentaries on the English common law."

The Ninth Circuit said in Wilson v. Gray, 1965, 345 F.2d 282, 284: "It is well settled that a federal court may not issue a writ of habeas corpus to set aside an invalid judgment and commitment where the petitioner is also held in custody under a lawful judgment and commitment. * * * In short, the writ of habeas corpus is only available in situations where discharge from custody will result from the granting of relief."

In Lee v. Swope, 9 Cir. 1955, 225 F. 2d 674, the court held that the prisoner in custody under two unexpired sentences was not entitled to habeas corpus to challange only one, since if either is valid he would not be entitled to immediate relief. The court cited Ex parte Melendez, 9 Cir. 1938, 98 F.2d 791; McNealy v. Johnston, 9 Cir. 1938, 100 F.2d 280; Dunlap v. Swope, 9 Cir. 1939, 103 F.2d 19; Demaurez v. Squier, 9 Cir. 1941, 121 F.2d 960; Graham v. Squier, 9 Cir. 1944, 145 F.2d 348; McDonald v. Johnston, 9 Cir. 1945, 149 F.2d 768; Oddo v. Swope, 9 Cir. 1951, 193 F.2d 492; Woollomes v. Heinze, 9 Cir. 1952, 198 F.2d 577. See also Wells v. People of the State of California, 9 Cir. 1965, 352 F.2d 439. There a prisoner was convicted of possessing a weapon in prison. The term was fixed at life. While serving this sentence he was convicted of assaulting a guard. Under the California Penal Code, because he was under a life commitment, the death penalty was assessed (later commuted to life). He attacked the validity of the first conviction, possession of a dangerous weapon. The court would not consider the issues raised in the habeas petition. "The mandate of the United States Supreme Court is clear and forceful,—the writ of habeas corpus may not be used in the federal courts as a means of securing the judicial decision of a question which, even if determined in the prisoner's favor, could not result in his immediate release." 352 F.2d at 443.

The facts in *Wells* and in the instant case are analogous to the situation in which a prisoner is convicted of the crime of escape while serving an allegedly invalid sentence. He is not entitled to release on a habeas petition. "This sentence (for escape) was not affected by the validity of the sentences being served at the time of the escape, and it had not been served at the time this petition was submitted. Habeas corpus is available only when the prisoner is entitled to immediate release." Crawford v. Taylor, 10 Cir. 1961, 290 F.2d 197, 198.

In Hendrick v. Beto, S.D.Tex. 1965, 253 F.Supp. 994, the prisoner was in custody in six separate causes. He pleaded guilty to the charge of burglary in Cause No. 91265. After trial, he was found guilty as charged, and was sentenced to life imprisonment as an habitual criminal. He pleaded guilty in the other five causes and in each case was sen-

tenced to confinement for not more than ten years. The prisoner (1) attacked the conviction for burglary and as an habitual criminal in Cause No. 91526 on a number of constitutional grounds and (2) made one allegation attacking, jointly, all the convictions in the five causes in which he had pleaded guilty. The district court, citing Lee v. Swope, noted that:

> "[T]here is one allegation which attacks, jointly, all the convictions in the five causes in which there was a plea of guilty. If, as the respondent urges, the allegation attacking this group of five convictions is not sustained, then the petition would have to be dismissed as being premature." 253 F.Supp. 994, 995.

The court held that there was no constitutional basis for the attack on the five sentences. In these circumstances:

> "[T]he petitioner is being held under five sentences which are not subject to constitutional attack, and the court will not inquire into the validity of petitioner's detention under the remaining sentence. This in no way vitiates petitioner's right to present constitutional questions concerning the remaining sentence when the time is such that, if the petition for the writ of habeas corpus were granted, petitioner could be released from custody. At the present time petitioner is being held on constitutionally valid sentences. The respondent's motion to dismiss is well taken." 253 F.Supp. 994 at 996.

This Court affirmed the district court in a per curiam opinion. 360 F.2d 618 (1966).

■ We hold, therefore, that if a prisoner is serving two or more sentences, and if the court should determine that one of these is valid, the court should dismiss as premature a habeas attack on any of the other sentences.

The district court in *Hendrick,* using Occam's razor, decided only one issue: a defendant's right under Texas law to require the state to introduce evidence corroborating a guilty plea "does not rise to Constitutional stature". Similarly, we elect to consider first the validity of the prisoner's conviction upon his plea of guilty in Cause No. 1767 because the issues are fewer and less complex than those in No. 1768. In addition, there is something to be said for first considering the validity of the longer sentence since, if that sentence is valid, a habeas attack on the shorter sentence will never mature.

## III.

■ No federal court has held that a guilty plea induced by a *prosecutor's* promise for that reason alone is involuntary. In Machibroda v. United States, 1962, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, the Supreme Court said that a "guilty plea, if induced by promises or threats which deprive it of the character of a *voluntary act* is void." But in *Machibroda* the defendant alleged that the United States Attorney had promised the defendant a more lenient sentence than the court imposed and had cautioned the defendant not to tell his attorney of their plea arrangement.

"Much of the current uncertainty about the legal status of plea discussions and plea agreements is attributable to the case of Shelton v. United States", 5 Cir. 1957, 242 F.2d 101, rev'd on rehearing, 246 F.2d 571 (en banc), rev'd 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958) (per curiam).[1] Shelton pleaded guilty to transporting a stolen vehicle and received a one year prison term. He moved to vacate the conviction on the ground that his plea was not voluntary, having been

---

1. Standards Relating to Pleas of Guilty, Recommended by the Advisory Committee on the Criminal Trial, American Bar Association Project on Minimum Standards for Criminal Justice, (cited hereafter as Pleas of Guilty), 64. The Committee is composed of: Walter V. Schaefer, Chairman, Wayne R. LaFave, Reporter, Leo Brewster, Livingson Hall, Walter E. Hoffman, Frank R. Kennison, Charles B. Murray, John M. Price, Earl G. Raichle, Earl T. Thomas and William F. Tompkins. See also the excellent article, Vetri, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L.Rev. 865 (1964).

induced by the promise of a one year sentence. The district court denied the motion on the finding that Shelton pleaded with full understanding of the commitments made to him, and that all prosecution promises were kept. This Court (Judges Rives, Tuttle, and Brown) vacated the sentence. 242 F.2d 101. Judge Rives wrote for the Court; Judge Tuttle dissented. On rehearing en banc, the court held that the plea was voluntary. 246 F.2d 571. Judge Tuttle wrote for the Court; Judges Rives and Brown dissented. The majority formulated the following test of voluntariness:

"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes)."

On certiorari, the Solicitor General entered a confession of error and the Supreme Court reversed in a memorandum opinion stating: "Upon the consideration of the entire record and confession of error by the Solicitor General that the plea of guilty may have been improperly obtained, the judgment of the United States Court of Appeals for the Fifth Circuit is reversed and the case is remanded to the District Court for further proceedings." 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579.

The Supreme Court's action in *Shelton* does not mean that it approved this Court's majority opinion, but neither does it mean that the dissenting opinion expressed the law "or that the law expressed by this Court was erroneous". So the Court held when it again faced the plea agreement problem. Martin v. United States, 5 Cir. 1950, 256 F.2d 345, cert. denied, 358 U.S. 921, 79 S.Ct. 294, 3 L.Ed.2d 240, 1958. Judge Tuttle,

for the Court (Judges Hutcheson and Cameron concurring) stated the test:

"The crucial issue appears to be whether, with all of the facts before him, including the advice of competent counsel, the plea was truly voluntary. The Supreme Court lays down no other test. The fact findings of the trial court as to the voluntariness should be reviewed on this issue on the clearly erroneous test." 256 F.2d at 349.

Later decisions of this Court have followed Martin: Sorrenti v. United States, 1962, 5 Cir., 306 F.2d 236, cert. denied 373 U.S. 916, 83 S.Ct. 1306 (1963); Busby v. Holman, 1966, 5 Cir., 356 F.2d 75; Cooper v. Holman, 1966, 5 Cir., 356 F.2d 82; Williams v. Beto, 1965, 5 Cir., 354 F.2d 698.

 In Busby v. Holman, as in the instant case, the appellant argued that "his confession was illegally obtained because it was coerced and because he was not accorded the assistance of counsel at the time it was given. * * * that by reason of these alleged violations of his constitutional rights his subsequent conviction on his plea of guilty was invalid." 356 F.2d at 77. In an opinion by Judge Maris, sitting by designation, the Court pointed out that there was no merit to the contention:

"For the confession was not offered in evidence in view of the fact that the appellant pleaded guilty and the question of its legality is relevant in the present proceedings only to the extent that it may have affected the voluntary character of the appellant's plea. It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all

non-jurisdictional defects in the prior proceedings against him. The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made." 356 F.2d at 77.

In *Busby*, as also in this case (giving Brown the benefit of the doubt) the appellant contended that his plea of guilty was influenced by his knowledge of the fact that he had made a confession which he mistakenly assumed could be used against him at the trial, and that his decision to plead guilty was, therefore, involuntary. The appellant had the advice of competent counsel in making his plea of guilty. The court said:

"[T]he district court was not called upon to try the merits of the advice given by counsel to the appellant but merely to determine that counsel was not so completely inept and incompetent as to render the proceedings a farce. The district court found that the appellant was afforded the assistance of competent counsel. We are satisfied that the record amply supports that finding. Indeed the fact that the appellant is alive today may well be a testimonial to it." 356 F.2d at 80.

Rule 11 of the Federal Rules of Criminal Procedure provides a general standard for accepting a guilty plea binding, of course, in the federal courts:

"A defendant may plead * * * guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made *voluntarily* with *understanding* of the nature of the charge." (Emphasis added.)

The state trial judge took great pains in questioning Brown to assure himself that Brown's plea was made "voluntarily with understanding" of the charge:

"THE COURT: You plead guilty because you are guilty or because of some hope of reward or promise of parole?

DEFENDANT: 'Cause I am.

THE COURT: Now, I can't take it if you just say you 'guess' you can.

DEFENDANT: 'Cause I am, yes, sir, 'Cause I am guilty.

THE COURT: I know, but you didn't talk like that. Are you guilty or not?

DEFENDANT: Yes.

THE COURT: I can't take a plea of guilty from a man that says, 'I may be guilty,' or something else.

DEFENDANT: Well, I'm guilty.

THE COURT: You do this of your own free will? Anybody forced you to, threatened you in any way?

DEFENDANT: No.

THE COURT: Made you promises of any kind?

DEFENDANT: No promises, no promises.

THE COURT: You understand the Court must find you guilty and assess your punishment at not less than five years, nor more than life in the penitentiary? You understand that?

DEFENDANT: Yes.

THE COURT: All right, Court accepts your plea."

After interrogation by the Court the attorneys read into the record stipulated testimony agreed to by the attorneys "and by the defendant himself in open court". This included a recital of the facts relating to the robbery to which the state's witnesses would testify if present in court, the defendant's waiver of his right to be confronted by the witnesses "both for and against him", and the defendant's admission that he "made a voluntary statement" (confession) after having been warned that "he did not need to make any statement at all, that any statement that he would

make would be used against him as evidence".

After the State rested, the proceeding was as follows:

"THE COURT: What says the Defendant?

MR. CROWELL (Attorney for the defendant): Sò stipulated.

THE COURT: Come up.

MR. CROWELL: The defendant has been advised of his rights, Your Honor.

THE COURT: Hold up your right hand.

NATHANIEL BROWN

the defendant after being duly sworn testified as follows:

THE COURT: Let him confirm his guilt.

DIRECT EXAMINATION

*BY MR. CROWELL:*

Q. You have heard the testimony by the District Attorney here. Are you guilty of that offense?

A. Yes, I am.

Q. And you did what the statement says you did?

A. What the statement said:

Q. Well, what the testimony was, did you sign a voluntary statement in this case? Are you guilty of this offense?

A. Yes, sir.

Q. And are you pleading guilty of your own free will? Were you offered any promise of reward or any threats?

A. No, no.

Q. You plead guilty because you are guilty?

A. Yes."

As we interpret the record, Brown received no promise from the prosecutor that the trial judge would impose a lighter sentence in No. 1767. The inducement was the prosecutor's promise to reduce the charged offense to robbery by assault, thereby eliminating the possibility of the death penalty and giving the accused some hope that the two sentences would run concurrently or that the sentence in No. 1767 would be no heavier than the sentence in No. 1768.

■ Properly safeguarded plea discussions and plea agreements between an accused and a *prosecutor* are consistent with the fair administration of justice. They are a "pervasive practice. The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney".[2] The suggested standards relating to pleas of guilty recently recommended by the Advisory Committee on the Criminal Trial to the American Bar Association Project on Minimum Standards for Criminal Justice recognize "the

2. "3.1 Propriety of plea discussions and plea agreements.

(a) In cases in which it appears that the interest of the public in the effective administration of criminal justice (as stated in section 1.8) would thereby be served, the prosecuting attorney may engage in plea discussions for the purpose of reaching a plea agreement. He should engage in plea discussions or reach a plea agreement with the defendant only through defense counsel, except when the defendant is not eligible for or does not desire appointment of counsel and has not retained counsel.

(b) The prosecuting attorney, in reaching a plea agreement, may agree to one or more of the following, as dictated by the circumstances of the individual case:

(i) to make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or nolo contendere;

(ii) to seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or nolo contendere to another offense reasonably related to· defendant's conduct; or

(iii) to seek or not to oppose dismissal of other charges or potential charges against the defendant enters a plea of guilty or nolo contendere.

(c) Similarly situated defendants should be afforded equal plea agreement opportunities." Pleas of Guilty 60.

propriety of plea discussions and plea agreements".[3]

These standards distinguish between the role of the trial judge and that of the prosecutor.[4] "The trial judge should not participate in plea discussions."[5] A plea agreement by the trial judge and the defendant may carry the connotation of an unseemly bargain between a malefactor and Justice. The judge, almost all-powerful in his sentencing capacity, has the duty of protecting an accused's constitutional rights as well as the duty of protecting society's interest in law enforcement.[6] Prosecuting attorneys, however, traditionally have had broad authority to institute criminal charges and to evaluate the charges in terms of society's interest in individual cases.[7] When the prosecutor and the accused enter into an agreement their conflicting interests merge. And, with the aid of both counsel and judge, an accused is protected from improvident or involuntary agreements.

■ Nathaniel Brown admitted his guilt without reservation. He acted on the advice of a competent attorney. His answers to the trial judge's questions show that he acted voluntarily and with understanding of the nature of the charge and the extent of the possible punishment. If, as appears, the inducement was a reduction in the offense charged, the prosecutor fulfilled his promise. There is nothing in the record to indicate that the inducement was the prosecutor's representation that the trial court would impose the same or lesser sentence than imposed in the case that was tried, No. 1768. We cannot infer such a promise. The petitioner made a deliberate and measured choice: he traded his defenses for a lighter charge in the hope of a lighter sentence. And the trial judge satisfied himself, after a careful examination, that Brown understood his plea of guilty and pleaded guilty of his own free will. Brown is bound by his plea.

## IV.

■ A large part of the transcript of the habeas hearing relates to the general competency of the attorney appointed to represent Brown in the two state cases. "The actual standard of incompetency applied by the overwhelming majority of courts is stated as follows: Incompetency of counsel such as a denial of due process and effective representation by counsel must be such as to make the trial a farce,

---

3. Pleas of Guilty 65.

4. "There are a number of valid reasons for keeping the trial judge out of the plea discussions, including the following: (1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussion makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent. Comment, 32 U.Chi.L. Rev. 167, 180–83 (1964); Note, 112 U. Pa.L.Rev. 865, 891–92 (1964); Note 55 Colum.L.Rev. 366, 371 (1955). As pointed out in a recent case:

> The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he reject the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence.

United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 254 (S.D.N.Y.1866)." Pleas of Guilty, Commentary, 73.

5. Pleas of Guilty 71.

6. See United States ex rel. Elkonis v. Gilligan, S.D.N.Y.1966, 256 F.Supp. 244.

7. See United States v. Tateo, S.D.N.Y. 1963, 214 F.Supp. 560.

**958**

sham, or mockery of justice." [8] This Court has defined "effective counsel" in terms of a "reasonable counsel" standard: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." McKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592, cert. denied 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). By either test, we agree with the court below.

■■■ Although Brown's attorney from time to time had branched out into small businesses when he found the practice of law unrewarding, we cannot say that the district court was clearly erroneous in finding, "Petitioner was not denied effective assistance of counsel at any time * * * [and] there was no denial of counsel at [the] time the confession was made or at any time subsequent thereto." The record contains substantial evidence, which the court must have credited, refuting specific charges that the attorney did not in fact render effective assistance.

The judgment is affirmed.

RIVES, Circuit Judge (concurring specially):

In Case No. 1768, Nathaniel Brown pleaded not guilty and was tried before a jury. The jury found him guilty and assessed his punishment at confinement in the State penitentiary for twenty-five years. He was represented by counsel appointed some eleven days before his trial. The district court, after a full hearing, held that Brown had the effective assistance of counsel. That finding is not, I think, clearly erroneous. Brown has failed to carry his burden of showing that his twenty-five year sentence in No. 1768 is constitutionally invalid.

I do not agree that it was premature for the district court to determine that question or that it is not necessary for

this Court to review that determination. Such a review would not be necessary if Brown's subsequent thirty-five year sentence under his plea of guilty in Case No. 1767 were sustained and if the earlier twenty-five year sentence did not operate as an inducing cause to the later thirty-five year sentence. Realistically considered, however, the two sentences were closely related. Before the district court Brown testified to the following occurrences just after the first sentence was imposed:

"A. After the D. A. turned and walked away, five or ten minutes later he came back and my lawyer came back and he said, 'You have 25 years already and why not cop out for this case'.

"Q. Okay. By 'cop out', you took that to mean plead guilty?

"A. Yes, sir.

"Q. Trade out with the State for some sentence?

"A. Yes, sir.

"Q. What inducement did he suggest to you? Why did he think that was such a keen idea?

"A. He said, 'You already have 25 years, why take a chance on your life?'

"Q. What were you to get if you copped out?

"A. Thirty-five years, which was 10 years more than I already had."

The only other witness to testify orally before the district court was Arthur Crowell, counsel who had represented Brown by appointment in both cases. Mr. Crowell neither confirmed nor denied the correctness of the quoted part of Brown's testimony, but only testified that it was possible:

"Q. Is it possible that you advised Brown that he had received a 25-year sentence on his jury trial case and therefore that it would be perhaps in his interest to consider pleading guilty to the other

8. Palmer, Incompetency and Inadequacy of Counsel as a Basis for Relief in Federal Habeas Corpus Proceedings, 20 S.W.L. J. 136, 138 (1966) and the cases cited.

charge and try to get a 25-year sentence to run concurrently with the first one?

"A. It is possible. I do not recall whether I discussed it in those terms or not. I am sure in discussing a plea of guilty that is one of the considerations that would have been discussed, but I do not recall exactly what transpired with regard to that."

The evidence is thus without substantial conflict that the earlier twenty-five year sentence in No. 1768 was a real inducement to Brown to plead guilty and accept a thirty-five year sentence in No. 1767. I do not understand the reluctance of my brothers to pass on the constitutional validity of the earlier sentence.[1] The record before this Court fails, in my opinion, to show any constitutional invalidity of the twenty-five year sentence.

Nor do I see any occasion in this case to again discuss the conflict of views as to what precautions must be exercised before accepting a plea of guilty induced by a prosecutor's promise.[2] My views are still the same as those which Judge Brown and I entertained in Shelton v. United States, 5 Cir.1957, 242 F.2d 101, on en banc rehearing, 246 F.2d 571, reversed per curiam on the Solicitor General's confession of error, 1958, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579. Among other views which we expressed, as the majority on original hearing (242 F.2d 113) and as dissenters on en banc rehearing (246 F.2d 578), is the following:

"If a plea of guilty is made upon any understanding or agreement as to the punishment to be recommended, it is essential, we think, that, before accepting such plea, the district court should make certain that the plea is in fact made voluntarily. Otherwise, the plea is subject to impeachment as having been induced by a promise of recommended leniency."

*Shelton* centered about the requirements of Rule 11, Federal Rules of Criminal Procedure. That rule was amended February 28, 1966, effective July 1, 1966, so as to require the court to address the defendant personally to determine whether the plea of guilty is made voluntarily and with understanding of the nature of the charge. A new sentence was also added at the end of the rule that, "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Of course, Rule 11 may go beyond the constitutional duty resting on a state court in a criminal case. Assuming however, that the constitutional duty is as exacting as that imposed by Rule 11, the state trial judge in this case exercised every possible precaution and the proceedings before him, as quoted in the majority opinion, may well serve as a model for other courts. The judge questioned the defendant personally to determine that his plea of guilty was made because he was guilty and not because of any hope of reward or leniency. He advised the defendant that the ultimate decision as to the punishment to be imposed rested with the Judge. The judge then inquired into the factual basis for the plea. After a full recital of the facts relating to the robbery and of the defendant's confession, the state trial judge again

1. Under the circumstances of this case, if the twenty-five year sentence was held constitutionally invalid, I would vote to remand for further consideration of the validity of the later thirty-five year sentence.

2. Admittedly I would welcome a Gideon-like trumpet call from the Supreme Court to transfer so much of the practical administration of criminal justice from the bargaining table to the courtroom. I recognize, however, the widespread prevalence of plea bargaining. In discussing "The Negotiated Plea of Guilty," the recent monumental report of the President's Commission on Law Enforcement and Administration of Justice begins (p. 134): "Most defendants who are convicted—as many as 90 percent in some jurisdictions—are not tried. They plead guilty, often as the result of negotiations about the charge or the sentence." The most that can be accomplished at the lower court level is to improve the present practice.

**960**

examined the defendant as to whether he heard the statement of facts, did what the statement said, whether his confession was voluntary, and whether he was pleading guilty because he was guilty.

To repeat, there is no need to discuss the conflict of views as to precautions to be exercised before accepting a plea of guilty made upon an understanding as to punishment, because the state trial judge wisely exercised every conceivable precaution in this case.

I therefore concur specially.