**UNITED STATES of America**

**v.**

**Leon R. CURTIS, Appellant.**

**No. 72–1050.**

United States Court of Appeals,
District of Columbia Circuit.

Decided Jan. 18, 1972.

As Amended Feb. 9, 1972.

—

---

1. Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

30, 1970. At the time the guilty plea was accepted, the District Court asked petitioner a series of questions, and he responded that no promises of any kind had been made to him, that he fully understood that he could be sentenced to a long period of confinement in the federal penitentiary, and that he was pleading guilty only because he was, in fact, guilty.[1]

On January 15, 1971 petitioner was sentenced to three to fifteen years of imprisonment on the robbery count. The other counts, on the government's motion, were dismissed. On March 9, 1971 petitioner wrote a letter to the trial court requesting a reduction of sentence or a new trial, and that request—construed as a motion—was denied. On March 30, 1971 he filed a pro se petition under 28 U.S.C. § 2255 asserting that counsel

Leon R. Curtis, proceeding pro se.

Mr. Thomas A. Flannery, U. S. Atty.,* with whom Messrs. John A. Terry and Charles E. Brookhart, Asst. U. S. Attys., were on the answer to the order to show cause filed in Misc. No. 3684.

Before BAZELON, Chief Judge and LEVENTHAL, Circuit Judge.

PER CURIAM:

On this appeal petitioner challenges the District Court's denial without a hearing of his petition under 28 U.S.C. § 2255. Indicted along with a co-defendant on four counts charging armed robbery, robbery, assault with a dangerous weapon and unauthorized use of a motor vehicle, petitioner entered a plea of guilty to the robbery count on October

had talked with the judge and made arrangements, so that if petitioner would enter a plea of guilty, he, (petitioner) would receive a sentence of the Youth Corrections Act. Only after such persistance and promising by counsel, did petitioner submit to entering of said plea. On the day said plea was entered counsel told petitioner that he would be asked certain questions by the judge, and that the only thing that was necessary was for petitioner to say yes and no to certain questions and that everything would be taken care of. Thusly, petitioner was tricked and induced to enter said plea, on the assumption that he would

---

* Mr. Flannery was the United States Attorney at the time the answer to the order to show cause was filed.

1. The COURT: Let me tell you this: I don't know myself what sentence I am going to give you until after I read the pre-sentence report and know all about you and give your counsel a chance to speak at your sentence. Therefore, if I don't know, no one else could know. Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Has any promise of any kind been made to induce your plea of guilty except that the remaining counts of the indictment will be dismissed at the time of sentence if your plea is accepted? Have any other promises been made to you?
THE DEFENDANT: No, sir.
THE COURT: Do you understand as a result of your plea you could be sentenced to as much as fifteen years in prison?
THE DEFENDANT: Yes, sir.
THE COURT: Are you entering this plea voluntarily of your own free will because you are guilty and for no other reason?
THE DEFENDANT: Yes, Sir.
(Transcript at 4–5.)

receive the Youth Corrections Act. On the day of his sentencing.

Without holding any sort of hearing, the trial judge denied the motion as frivolous and further denied petitioner's motion for leave to appeal without prepayment of costs.

This case raises the precise question that was at issue in United States v. Simpson[2]. Indeed, the petition submitted by Curtis is virtually identical to the one submitted by Emmanuel Simpson, and we must observe here—as we did in *Simpson*—that the judicial process can be abused "by prisoners who have assurance from fellow inmates that their use of what is in effect a pre-prepared form will enable them to obtain a hearing promising at least some possibility, however slight, of relief."[3] It does not follow, however, that Curtis is entitled to no relief or that his petition must contend with some presumption of frivolity. With the case in its present posture we clearly must assume that the allegations of the petition are true. And if they are true they entitle Curtis to relief from an involuntary plea of guilty.[4]

Of course, if petitioner's allegations are false he is entitled to no relief. But without holding any hearing or appointing counsel to aid in the factfinding process it was patently impossible for the trial court to determine the truth or falsity of the allegations. Certainly the trial judge could determine on the basis of his own recollection whether he had himself promised petitioner or his attorney that petitioner would receive a sentence under the Youth Corrections Act in return for a plea of guilty. But that is not the question presented by the petition. Rather, Curtis alleges that promises were made by his own attorney, and presumably in private, and the truth of that assertion could not be measured without hearing some testimony or inspecting affidavits.

While the petition is sufficient in form, it may, of course, be frivolous in fact. If the allegations have no foundation in fact it may be possible for the District Court to resolve the issue without a lengthy and burdensome hearing. After all, the question presented is narrow and sharply defined, and there are very few persons who are likely to have information pertinent to its resolution. In any case, petitioner has no right to a particular type of evidentiary hearing, but only to a fair and complete determination of the validity of his claim. We leave it to the discretion of the District Court to conduct the inquiry in whatever manner seems best designed to minimize the burden on the judicial process while assuring a rapid and thorough investigation of petitioner's allegations.[5]

2. 141 U.S.App.D.C. 8, 436 F.2d 162 (1970).

3. 141 U.S.App.D.C. at 11, 436 F.2d at 165.

4. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962):
A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. See Walker v. Johnston, 312 U.S. 275, [61 S.Ct. 574, 85 L.Ed. 830]; Waley v. Johnston, 316 U.S. 101, [62 S.Ct. 964, 86 L.Ed. 1302]; Shelton v. United States, 356 U.S. 26, [78 S.Ct. 563, 2 L.Ed.2d 579;] reversing, [5 Cir.,] 246 F.2d 571. "A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that *a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences*." (Emphasis added.) See United States v. Simpson, 141 U.S.App.D.C. at 10, 436 F.2d at 164.

5. Machibroda v. United States, 368 U.S. at 495, 82 S.Ct. at 514:
What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not

The District Court may wish to utilize the approaches discussed in *Simpson,* including the use of law students, under supervision, designated to counsel with petitioner.[6]

Vacated and remanded.

Bazelon, Chief Judge, concurred in result only.

strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the petitioner.

At this time we also do not require that the remand proceedings be conducted by a judge other than the one who presided at trial. Compare United States v. Simpson, No. 24,817 (D.C.Cir. July 19, 1971), slip opinion at 6. In *Simpson* the trial court framed the issue on remand as one involving a breach of faith by the trial judge. There is no indication that the trial judge would so frame the issue in the case now before us.

6. The assignment of law students supervised by professors to represent the petitioner might best serve the interests of the petitioner while presenting "a means,

at modest cost, of furthering objectives of criminal justice." United States v. Simpson, 141 U.S.App.D.C. at 15, 436 F.2d at 169. The law students could perhaps provide an effective screening mechanism by advising petitioner as to the merits of his claim and by discouraging him from pressing it if it is based on a misunderstanding of the controlling legal principles. *See* Note, Developments in the Law— Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1197–1202 (1970).

Law student programs are currently being utilized by many trial judges in the District Court in this Circuit. In one program operating out of Georgetown Law School, the Prisoners Counseling Project, a number of students work with problems arising after conviction. They are under the supervision of a member of the Faculty who is a member of the bar of the District Court and who has substantial experience as a practicing lawyer.